*Exhibit 1*

Original - Court
1st copy - Defendant
2nd copy - Plaintiff
3rd copy - Return

Approved, SCAO

| **STATE OF MICHIGAN** | | **SUMMONS** | **CASE NO.** |
|---|---|---|---|
| 56th | JUDICIAL DISTRICT | | 24- 4059 -CZ |
| | JUDICIAL CIRCUIT | | Van Langevelde |
| EATON | COUNTY | | |

Court telephone no.

**Court address**
1045 INDEPENDENCE BLVD,. CHARLOTTE, MI 48813

(517) 543-7500

| Plaintiff's name, address, and telephone no.<br>HEATHER MCKAY<br>2121 Roberts Lane<br>Lansing, MI 48910<br>(517) 619-2423<br>mckayh444@gmail.com | v | Defendant's name, address, and telephone no.<br>VICTORIA WENDORF; an individual; BLUE HEART HOME HEALTHCARE LLC, a Michigan Limited Liability Company; NEXT STEP HOME HEALTHCARE LLC, a Michigan Limited Liability Company; and, NEXT STEP CASE MANAGEMENT, LLC, a Michigan Limited Liability Company,<br>3973 W. Bellevue Highway<br>Olivet, MI 48906<br>(517) 719-3880 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>INA R. O' BRIANT (P60968)<br>LAW OFFICES OF INA R. O' BRIANT, PLLC<br>P.O. Box 197<br>Mason, MI 48854<br>(517) 204-9195    iobriantlaw@yahoo.com | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>11-27-24 | Expiration date*<br>2-26-25 | Court clerk<br>KSC |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (3/23)   **SUMMONS**                          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

## STATE OF MICHIGAN
## IN THE 56TH JUDICIAL DISTRICT COURT FOR THE COUNTY OF EATON

HEATHER MCKAY,
    Plaintiff,

**CASE NO. 24-      -CZ**

**HON.**

V

**VERIFIED COMPLAINT**

VICTORIA WENDORF; an individual; BLUE
HEART HOME HEALTHCARE LLC, a
Michigan Limited Liability Company; NEXT
STEP HOME HEALTHCARE LLC, a Michigan
Limited Liability Company; and, NEXT STEP
CASE MANAGEMENT, LLC, a Michigan
Limited      Liability      Company,
    Defendants,
    Jointly and severally.

INA R. O'BRIANT (P60968)
LAW OFFICES OF INA R. O'BRIANT, PLLC
Attorney for Plaintiff
P.O. Box 197
Mason, MI 48854
(517) 204-9195
iobriantlaw@yahoo.com

There is no other pending or resolved civil action arising out of the same
transaction or occurrence as alleged in the complaint.

## VERIFIED COMPLAINT

NOW COMES, HEATHER MCKAY, Plaintiff, by and through her attorney, INA R.

O'BRIANT, of LAW OFFICES OF INA R. O'BRIANT, PLLC, and in support of this Complaint,

hereby states as follows:

### Jurisdiction and Parties

1.      Plaintiff is an Individual residing in Ingham County, MI.

1

2.    Defendant, VICTORIA WENDORF, is an individual who is a resident of Eaton County, Michigan who also regularly conducts business in Eaton County, MI.

3.    Defendant, BLUE HEART HOME HEALTHCARE LLC, a Michigan Limited Liability Company that regularly conducts business in Eaton County, MI;

4.    Defendant, NEXT STEP HOME HEALTHCARE LLC, a Michigan Limited Liability Company that regularly conducts business in Eaton County, MI;

5.    Defendant, NEXT STEP CASE MANAGEMENT, LLC, a Michigan Limited Liability Company that regularly conducts business in Eaton County, MI;

6.    That Defendant, Victoria Wendorf is the sole owner/manager of BLUE HEART HOME HEALTHCARE LLC, a Michigan Limited Liability Company; NEXT STEP HOME HEALTHCARE LLC, a Michigan Limited Liability Company; and, NEXT STEP CASE MANAGEMENT, LLC.

7.    Some of the Acts, occurrences, and omissions that gave rise to this cause of action occurred in Eaton County, Michigan.

8.    The amount in controversy, exclusive of costs, interest, or attorney fees, does not exceed $25,000.

## Factual Background

9.    Plaintiff incorporates by reference paragraphs 1 through 8, as if fully restated herein.

10.   Defendant(s) entered into a contractual relationship with Plaintiff pursuant to which, Plaintiff provided Home Health Care services on behalf of Defendant(s), at Defendant(s) request.

2

11.      Between April 20, 2021-April 19, 2023, Plaintiff provided home health care services, on behalf of Defendant(s), at Defendant(s) request.

12.      That Plaintiff repeatedly requested funds that were due and payable to Plaintiff, by Defendant(s), including but not limited to: overtime wages and/or COVID-19 Pandemic pay.

13.      That as a result of Defendant(s) failure/refusal to pay Plaintiff the funds she was due and owed by Defendant(s), Plaintiff filed a Complaint against Defendant(s) with the U.S. Department of Labor.

14.      That an Investigation ensued and it was ultimately decided by the US Department of Labor and agreed upon by Defendant(s), that Defendant(s) owed Plaintiff the amount of $18,223.40.

15.      On or about January 18, 2024, Defendant provided the US Department of Labor with a fully executed WH-56 Form acknowledging and confirming that they owed Plaintiff the amount of $18,223.40. Defendant(s) is/are in possession of this document.

16.      That to date, Defendants have still failed to pay the money that is due and payable to Plaintiff.

### Count 1: Account Stated

17.      Plaintiff incorporates by reference paragraphs 1 through 16, as if fully restated herein.

18.      At Defendant's request, Plaintiff provided Defendant certain services on open account and on Defendants' promise(s) to pay for them.

19.      The account has become stated between the parties because on January 18, 2024, the parties agreed that there was a balance due to Plaintiff of $18,223.40. Defendant has not paid the

3

balance owing on the account, despite Plaintiff's demands for payment as well as the US Department of Labor's request(s) for payments.

20. Defendant is now justly indebted to Plaintiff in the amount of $18,223.40.

21. An affidavit verifying the balance due on the account is attached as Exhibit 1, and a copy of the document verifying the Account is attached hereto as Exhibit 2.

WHEREFORE, PLAINTIFF RESPECTFULLY REQUESTS that this court enter judgment against Defendants in the amount of $18,223.40, plus interest from this date, costs, and attorney fees.

## **Count 2: Breach of Contract**

22. Plaintiff incorporates by reference paragraphs 1 through 21, as if fully restated herein.

23. Defendant entered into a contract with Plaintiff pursuant to which, Plaintiff provided services on behalf of Defendant(s), at Defendant(s) request. The Defendants are in possession of a copy of the above referenced contract.

24. Pursuant to said Contract, Plaintiff proceeded to provide home health care services on behalf of Defendant(s), at Defendant(s) request including but not limited to the time period of: April 20, 2021-April 19, 2023.

25. That Plaintiff repeatedly requested funds that were due and payable to Plaintiff, by Defendant(s).

26. That Defendants have refused/failed to pay the amount due.

27. That Plaintiff filed a complaint against Defendants, with the US Department of Labor.

28. That the US Department of Labor conducted an investigation into this complaint.

4

29. That the US Department of labor determined that Defendants owed Plaintiff the amount of $18,223.40.

30. Defendant's conduct as described in this complaint constituted a breach of the contract between the parties.

31. Plaintiff has been damaged by Defendant's breach in the amount of $18,223.40, the outstanding balance due to Plaintiff, by Defendants. (See *Exhibit 2*)

WHERFORE PLAINTIFF REQUESTS that this court enter judgment in their favor and against Defendants in the amount of $18,223.40, plus interest at the statutory rate from the date of filing and that the court grant her any other relief the court deems warranted.

## Count 3: Quantum Meruit/Unjust Enrichment/Restitution

32. Plaintiff incorporates by reference paragraphs 1 through 31.

33. In the alternative, in the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, the doctrine(s) of Quantum Meruit/Unjust Enrichment/Restitution would also apply.

34. In the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, that Plaintiff pleads in the alternative that Plaintiff and Defendants engaged in a course of conduct wherein Defendants requested that Plaintiff perform Home Health Care and/or related services, for the benefit of Defendants.

35. In the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, that Plaintiff pleads in the alternative that the course of dealing in which Plaintiff and Defendants engaged in did not constitute or result in a contractual agreement.

5

36. In the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, that Plaintiff nonetheless conferred a benefit of Home Health Care and/or other related services upon Defendants without receiving adequate benefit in return.

37. In the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, that the benefit that Plaintiff conferred on Defendants has unjustly enriched Defendants without conferring any benefit on Plaintiff, such that Defendants act wrongfully in retaining that benefit.

38. In the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, that Plaintiff did not intend that Defendants retain that benefit without just compensation, and Plaintiff has otherwise acted equitably in this matter, such that Defendants must disgorge that benefit to Plaintiff.

WHERFORE PLAINTIFF RESPECTFULLY REQUESTS that this court enter a judgment of restitution in Plaintiff's favor ordering Defendants to pay to Plaintiff the full amount of the benefit Plaintiff conferred on Defendants in a specific amount of $18,223.40 plus incidental and consequential damages, costs, interest, and attorney fees.

I declare the above information is true to the best of my knowledge, information and belief.

Dated: <u>November 21, 2024</u>                    <u>/s/ Heather McKay (signed electronically)</u>
                                        HEATHER MCKAY

Respectfully prepared and submitted by:

/s/ Ina R. O'Briant (signed electronically)
INA R. O'BRIANT (P60968)
LAW OFFICES OF INA R. O'BRIANT, PLLC
Attorney for Plaintiff
P.O. Box 197
Mason, MI 48854
(517) 204-9195
iobriantlaw@yahoo.com

6

# Exhibit 1

## STATE OF MICHIGAN
## IN THE 56TH JUDICIAL DISTRICT COURT FOR THE COUNTY OF EATON

HEATHER MCKAY,
    Plaintiff,

**CASE NO. 24-**      **-CZ**

    V

**HON.**

**AFFIDAVIT OF ACCOUNT**

VICTORIA WENDORF; an individual; BLUE
HEART HOME HEALTHCARE LLC, a
Michigan Limited Liability Company; NEXT
STEP HOME HEALTHCARE LLC, a Michigan
Limited Liability Company; and, NEXT STEP
CASE MANAGEMENT, LLC, a Michigan
Limited      Liability      Company,
    Defendants,
    Jointly and severally.

---

INA R. O'BRIANT (P60968)
LAW OFFICES OF INA R. O'BRIANT, PLLC
Attorney for Plaintiff
P.O. Box 197
Mason, MI 48854
(517) 204-9195
iobriantlaw@yahoo.com

---

## AFFIDAVIT OF ACCOUNT

**HEATHER MCKAY**, being sworn, states:

1.      I am Plaintiff in this case.

2.      I make this affidavit on personal knowledge.

3.      If sworn as a witness, I can testify competently to the facts stated here.

4.      Defendants are justly indebted to Plaintiff for $18,223.40, plus interest, over and above

     all legal setoffs and counterclaims.

5.    The Plaintiff is not in possession of the Statement of Accounts/WH-56 Form, however,

Defendant(s) is/are in possession of the WH-56 Form that contains that Statement of

Accounts as they provided same to the US Department of Labor and upon Plaintiff's

Information and Belief, it is true and correct.

**HEATHER MCKAY**

Subscribed and sworn to before me on this ___19th___ day of November, 2024.

Notary Public, Court Clerk
_____ Ingham _____ County, MI
Acting in ___ Ingham ___ County, MI
My commission expires: __1 / 18 / 28__.

TERRIE HENSLEY
Notary Public - State of Michigan
County of Ingham
My Commission Expires Jan 18, 2028
Acting in the County of ___ Ingham ___

Prepared by:
INA R. O'BRIANT (P60968)
LAW OFFICES OF INA R. O'BRIANT, PLLC
Attorney for Plaintiff
P.O. Box 197
Mason, MI 48854
(517) 204-9195
iobriantlaw@yahoo.com

# Exhibit 2

**Narrative Report**
**Fair Labor Standards Act**

Case ID:  1976718
Local Filing ID: 2023-191-02382

Blue Heart Home Healthcare LLC
DBA: Next Step Home Healthcare LLC, Next Step Case Management
Corporate address: 3973 W. Bellevue Highway
Olivet, MI 48906
PH: 517-719-3880
FEIN: ██████████
NAICS: ██████

Employer point of contact:
Victoria Wendorf, owner
Mobile: [ (b)(6), (b)(7)(C) ]
Email: nextstep.vwendorf@gmail.com

Outside Counsel:
Meagan Clayton, attorney
Rhoades McKee, law firm
55 Campau Avenue NW Ste 300
Grand Rapids, MI, 49503
Office: 616-235-3500
Direct: 616-233-5136
Fax: 616-233-5269
Email: mclayton@rhoadesmckee.com

**Investigation Type/Period**:  The FLSA investigation is initiated by a complaint from a former employee, Heather McKay. Ms. McKay (henceforth, the "complainant" or "C") was a home health aide employed by Blue Heart Home Healthcare LLC (henceforth, the "firm" or "employer"). The complainant's allegation is straight time pay for overtime hours, because of a misclassification as an independent contractor, and an employer-mandated change in standard overtime pay for nonexempt employees. [ (b)(7)(E) ] The investigative period is 4/20/2021 to 4/19/2023.

**Investigation History**: There is no prior history under the firm's FEIN or business names.

**Main Office District Office (MODO)**: The firm is not a multi-unit employer. The sites of work are private residences. The owner's home address is the headquarters. The MODO is the Grand Rapids, MI District Office.

**COVERAGE**

The firm employs and contracts domestic service workers, who work within the private homes of clients receiving care, by aiding in activities instrumental to daily living and providing fellowship and protection. Clients often come from auto injuries. The owner and operational manager of the firm is Ms. Victoria Wendorf. Ms. Wendorf started the business as a registered nurse. The firm was incorporated in 11/2/2020 according to the MI Department of Licensing & Regulatory Affairs. The firm employs home health aides as a third-party employer, and it employs some family members of the client as aides. The firm also takes on state cases and severe referrals directly from the state of Michigan.

According to the initial conference, the pay period is weekly. Pay dates are on Fridays with a single workweek beginning on Monday and ending on Sunday. Direct deposit is the common method of payment. There are 1st, 2nd, and 3rd shifts, with a single shift running up to 16 hours. Shifts are commonly 8 to 16 hours per day. The employer sets the maximum number of hours that may be worked at each home per week. The health aides and client work together to schedule the number of hours each person providing care may work on the schedule. The hours are divided among the caregivers employed by the firm as nurses, LPNs, and health aides.

Individual coverage per 202(a) is applicable because the workers provide homecare services within private homes, since Congress has established that the employment of persons in domestic service households affects commerce. The employer does not own or partially pay rent at any facilities or houses where the workers serve clients. The firm is a third-party agency.

Coverage per 3(s)(1)(b) is not applicable. No employees perform work at an institution where clients stay overnight on institutional premises to receive care.

The firm refused to elaborate on Annual Dollar Volume to confirm coverage under 3(s)(1)(A). The employer has been in receipt of the appointment letter with records requested since 4/19/2023. Ms. Wendorf stated in an email on 5/4/2023 that the average gross revenue is below $500,000. A 72-hour demand letter was issued on 5/5/2023, via email by ADD Amador Diaz Jr. The counsel stated in a letter on 6/20/2023 that the firm has failed to submit 2022 tax returns and is re-amending a 2021 return. The firm has not provided year-to-date information as requested. The counsel re-affirmed the state of finances in an email on 8/4/2023. The initial conference confirmed that any office supplies, such as paper or ink for timesheets, or medical supplies such as for wound care are ordered at national major retailers like Meijer, Wal-Mart or Amazon.com.

**FLSA 203(d) employer**:

Victoria Wendorf is the 3(d) employer. She is the 100% owner of the firm that sets pay rates, interviews and hires employees, enforces disciplinary action or ends an independent contract, approves the final schedules, and represents the firm to external parties in all legal matters. Ms. Wendorf is directly accessible to all employees by phone, email, group chat, or a site visit, such as when the employer drives around to collect timesheets.

**Joint employment:** Joint employment is not identified with any other entity.

**Employment Relationship**: The firm does classify some workers as independent contractors. The firm exempts independent contractors whose wages can be documented on a tax form numbered 1099, instead of a tax form W-2. An economic reality analysis was conducted for the complainant, [b)(6); (b)(7)(C)] The [b)(6); (b)(7)(C)] were 1099 contractors converted to W-2 employees after a few months under the firm. Other contractors that back wages are computed for were paid on a 1099 for the duration of their employment, including the C. [b)(6); (b)(7)(C)] as well as C, were interviewed. Additional statements are provided by undisputed employees [b)(6); (b)(7)(C)]. Ultimately, the fact pattern supports a systematic misclassification of some employees as independent contractors. The investigative period is fully after 3/8/2021.

Core Factors

1. The nature and degree of control over the work:

Each home has a maximum number of homecare hours that may be assigned between each worker. The cap on hours for workers with a familial relationship changed from 56 hours to uncapped in December 2022. Six interviews support that the group of workers at each home set their own schedule, the owner approves the final schedule and time off, and the owner holds at least one worker responsible for filling in gaps with the schedule. Ms. Wendorf handles the structure of schedules for all homes the same, with no difference between contractor and employee expectations. The workers largely make their own schedule among each other and prioritize the schedule around the plan of care. All workers fill out the same timesheets and document daily care in the same format provided by the firm. Ms. Wendorf picks up the physical timesheets at each location of work and processes payroll as the manager.

According to the initial conference, an independent contractor is not subject to disciplinary action in the same vein as a W-2 employee, and an independent contractor is likelier to have scheduler duties. The firm could not articulate during the initial conference what makes a W-2 employee with scheduling duties distinct from a contractor with scheduling duties, or what alternative discipline an employee is subject to (e.g., termination, removal from schedule) that an independent contractor is not subject to. The interviews did not indicate any difference in duties or expectations for workers compensated under different categories.

All 6 interviews recognize Ms. Wendorf as the direct supervisor and final authority on operational matters. The interviews indicate a difference between who oversees their continued employment or contract, and who may be answerable to Ms. Wendorf about scheduling questions and shift gaps unattended. Ms. Wendorf approves all shifts and administrates the payment of all labor for the hours reported.

None of the affected contractors employ staff, establish or adapt their own organizational policy, or negotiate compensation as someone with a limited availability of services available to multiple clients. The workers are subject to the same direct supervision and policies of the firm in the same way that W-2 employees are. There is no distinction among the employee pool on who could be a contractor or a regularly paid employee, outside of registered nurses with a client list independent of the firm.

2. The individual's opportunity for profit and loss:

The only worker opportunity for profit or loss is through the at-will relationship with the firm and to be assigned more shifts. Some deductions on the payroll indicate a loan or pay advance with Ms. Wendorf. No workers market themselves for other opportunities in a public manner. The only compensation is the hourly rate and reimbursement for mileage that is reported on the timesheets. There was no back-and-forth negotiation with the employer on the type of compensation paid or at what frequency. The affected contractors are paid comparably to W-2 employees.

According to the C, the employer offered the option of being paid as a contractor at $14.00 or as a W-2 employee at $12.50

(b)(6); (b)(7)(C)

None of the interviews indicate an initiative or forethought of open-market competition with other workers who are in business for themselves. Separation from Ms. Wendorf would require finding another full-time job under another company. Three interviews from those with contractor experience, including the C, indicate time spent as a contractor was worked exclusively with the firm, on a full-time basis.

The clients provide for and restock their own daily household items, such as cleaning supplies. The employer provides catheter bags and materials, and wound care supplies. Workers are paid their hourly rate and mileage for driving duties during the workday, such as taking a client shopping or to a medical appointment. The workers drive their own vehicles all in a day's work. Workers provide their own unbranded scrubs and stethoscopes. The employer offers mileage reimbursement in addition to wages. None of the workers hired by Ms. Wendorf have an office or managerial duties comparable to someone in business for themselves. Due to the nature of work, the workers do not invest in personnel technologies or commit to matters of financial impact on behalf of an organized business. Ms. Wendorf is a distinct business manager who wears many hats to handle the administration of an organization.

Other Factors

3. The amount of skill required for the work:

The employer does not own its own website, but various advertisements on third party sites such as NPI No, NPI Health, and Bizapedia identify the central agent as Victoria Wendorf and identify the firm as a home health provider. Registered nurses may work with multiple clients with more severe cases and help feed medication directly. Non-RNs and RNs toilet, bathe, clean, cook for clients, and help maintain the household in ways the client cannot provide for his or herself. The work is manual in nature, follows the routine of the client receiving care, and outside the household requires no skills other than driving as needed.

4. The degree of permanence of the working relationship between the individual and potential employer:

The C has worked for the owner since July 2021, alongside [(b)(6); (b)(7)(C)] has been

contracted since [ (b)(6); (b)(7)(C) ] are workers who were hired in [ (b)(6); (b)(7)(C) ] as contractors for the first 5 months of work. They converted to W-2 workers at the beginning of 2023. The interviews do not indicate a distinct period of duties in the beginning of employment. [ (b)(6); (b)(7)(C) ] was paid at the same hourly wage after a change to a W-2 employee, and [ (b)(6); (b)(7)(C) ] received a pay raise over $1.00.

No workers advertise their services via website or other marketing. All the interviews support being interviewed by and hired by Ms. Wendorf after word-of-mouth referral or an online application to a third-party posting, such as on Facebook. None of the interviews indicate separate contracts for similar employment under another entity while hired under the firm.

5. Whether the work is part of an integrated unit of production:

Whether paid on a W-2 or 1099, all the homecare workers perform the same integral work. The job is to assist clients in and about their private homes. There are no other types of or level of employee. The nature of the integral work is supported by all 6 interviews. The interviews indicate no discernable difference between contractors and employees while working.

As of 12/20/2023, [ (b)(6); (b)(7)(C) ] was removed from computations in consultation with ADD Amador Diaz Jr. The employment relationship could not be confirmed, the employer identified the contractor as separate from other workers, and the worker refused to further clarify in an interview. See Disposition.

**EXEMPTIONS**

All employees and contractors are paid on an hourly basis, with an intention to pay Time ½ the regular rate of pay for more than 40 hours. No employees or contractors are paid based on a salary, according to the initial conference and all employee interviews. The complainant, [ (b)(6); (b)(7)(C) ] [ (b)(6); (b)(7)(C) ] provided interview statements.

**213(a)(15) and 213(b)(21)**

As a third-party employer, the company is not eligible to claim the companionship or live-in exemption. There are no live-in employees on a permanent basis or extended period.

**29 CFR 541**

[ (b)(6); (b)(7)(C) ] identified as a regional manager. She is unrelated to any clients. The employee is not considered exempt by the firm. The employee is not exempt from overtime after analysis. The employee fails the salary basis and level. The employee has been paid [ (b)(4) ] during the subject period. A 40-hour workweek at [ (b)(4) ] per hour is [ (b)(4) ] which is below the salary level of $684 per week. The employee is paid for hours fewer than 40 throughout employment: example dates are December 16th, October 7th, and March 25th of 2022; and December 24th and 17th, November 26th, September 9th, and August 27th of 2021. [ (b)(6); ] works as few as 1 hour and 11 hours, such as on the respective dates in 2022, July 29th and April 29th. There is not a clear salary basis standard for the compensation. She has worked more than 40 hours for all pay periods thus far in 2023, at [ (b)(4) ] per hour.

(b)(6); (b)(7)(C) 's daily responsibilities do not meet the executive exemption. The responsibilities per shift are comparable to any other health aide. The employee has on and off experiences with assisting the owner during interviews, but not particular recommendations of weight. Ms. Wendorf stated in the initial conference that she handles all hiring or firing of employees, and only hired an administrative assistant as of January 2023. New hires can shadow (b)(6); to help them acclimate to the household needs. The employee is not involved in disciplinary actions or firing. The employee does help maintain schedules at multiple homes that she can work a shift at, as employees have a large degree of control over their set schedule at a home. Ms. Wendorf approves all final changes or requests, such as days off that may not be reconciled by quick communication. Each house's schedule is a collaborative effort between health aides at a particular home, the client, and family members who are also aides.



(b)(6); (b)(7)(C)

The job duties do not meet the administrative exemption or a mixture with the administrative exemption. It is not evident that (b)(6); can make financial commitments on behalf of the employer or represents management to other caregivers. The clients own the home, and the employee is not responsible for running the home as an administrator or office manager. Six interviews support a distinction between who makes sure everyone stays on track with the schedule and someone recognized as a supervisor; the 3(d) employer is named as the direct supervisor and only member of management in all 6 interviews, not another health aide or nurse.

The professional exemption is not met because the employee is not registered as a nurse. There is no specific level of specialized instruction required for the integral, dexterous work.

## STATUS OF COMPLIANCE

**Section 206**: No violation cited. The lowest hourly wage is (b)(4) for per hour. Domestic service workers are entitled to the federal minimum wage under 206(f) because they are covered under 202(a), and the employees work more than 8 hours in a workweek at 1 or more households.

**Section 207**: Violations cited. Overtime protections apply under Section 207(l) because employees are covered under Section 202(a). These domestic service workers provide services of a household nature in or about a private home for more than 40 hours in any workweek that substantiated a violation.

Violation #1: The employer provides straight time pay for overtime hours above 40 in one week. A third-party employer may not exempt a domestic service worker in or about a private home from overtime pay. The 3(d)-employer admitted during initial contact via phone call on 4/19/2023 that the firm does have a policy of straight time pay for overtime hours as a business choice. In response to the demand letter, the employer asserted that timesheets for the period were largely damaged in a home flood. The firm asserted during the initial conference, with counsel present, that the weekly payroll may serve as accurate time records on a weekly basis. The firm did provide some timesheets for year 2023.

Method of computation: The hours worked per week is revealed via the payroll records. The total straight time compensation is divided by the total hours per week to show the regular rate of pay. Then, the regular rate is divided by 2 to reveal the halftime rate. Then, the halftime rate is multiplied by the hours worked above 40 in the same week. The result is the back wages due.

The computations result in $20,688.24 between 16 W-2 employees. Three interviews support knowledge of an employer-enforced policy on straight time for overtime. The reason given during the initial conference is that some insurance policies undercut reimbursements to pay $0 to $10 from roughly July 2021 onward. The employer gave the example of an employee working at (b)(4) per hour, but the insurance only paying the equivalent of (b)(4) per hour. Ms. Wendorf stated that interruptions in health care can cause material harm, or loss of life if prolonged. The firm enforced an arrangement of straight time pay for overtime hours on a weekly basis to retain residents and employees. No specific legal advisement has been asserted to have guided the employer's change in overtime practices.

Violation #2: Failure to properly classify the employment relation of certain independent contractors. The employees are due the premium pay for overtime hours in one week. The underlying source of the complainant's violation is straight time pay for overtime. See Exemptions.

Method of computation: The hours worked per week is revealed via the payroll records. The total straight time compensation is divided by the total hours per week to show the regular rate of pay. Then, the regular rate is divided by 2 to reveal the halftime rate. Then, the halftime rate is multiplied by the hours worked above 40 in the same week. The result is the back wages due.

Computations total $11,948.15 between 3 misclassified contractors and 2 contractor-turned-employees with no distinction between the labor periods. Three interviews by misclassified employees, such as the C, (b)(6); (b)(7)(C) support an economic dependence on the employer with an evident employment relationship for the duration of being compensated for their labor. A fourth interview by employee (b)(6), (b)(7)(C) supports the employment relationship of at least the complainant. The reason given by the firm is that some workers market themselves and choose to be paid as 1099 workers, instead of on a W-2 for a period, for tax purposes. No specific legal advisement is cited as a reason for the violation.

As of 12-20-2023, $3,366.13 computed for (b)(6); (b)(7)(C) was removed under violation #2. The above computations are accurate to the removal of the contractor. See Disposition.

Violation #3: Failure to combine hours worked in the same workweek. The employer employed health aides at multiple sites of work and did not combine the hours worked at the sites for the purpose of the regular rate. It is common for health aides to work at different rates of pay at different private homes in the same week but on different days, rather than back-to-back shifts. The employees are paid straight time only.

Method of computation: It is evident on the payroll where employees are paid two different rates of pay in the same week. The different hours worked are multiplied by the relevant rates of pay to compute total straight time compensation. The total compensation is divided by the combined hours worked. This

results in a meshed regular rate of pay. There is no prior agreement evident surrounding overtime at different rates of pay. The regular rate is divided by 2 to reveal the halftime rate. Then, the halftime rate is multiplied by the total hours worked above 40 in the same week. The result is the back wages due.

Computations result in $2,336.47 between 3 employees recognized under a bona fide employment relationship with the 3(d) employer. The reason for the violation is unawareness of hours worked combined under the FLSA. No specific advisement from a legal entity is cited. The violation is apparent on the weekly payroll.

Travel Time: No violation cited. Employees and contractors complete the same weekly timesheets, which are picked up by the 3(d) employer. Year 2023 timesheets demonstrate a section for mileage, notes, and descriptions to mark work time spent away from the site of work, or when going to another site. Documentation of drive time is supported by employees such as (b)(6); (b)(7)(C) – who was computed the most back wages related to violation #3 – (b)(6); (b)(7)(C) and the complainant. The rate of pay is based on the home related to the marked timesheet. Mileage for errands and appointments is provided to employees on top of normal compensation. The employer provides ample opportunity for the workers to correctly report their travel time.

Sleep Time: No violation cited. Health aides work shifts less than 24 hours and are compensated for the entire time they are working in their clients' homes. There are no single shifts 24 hours or more where sleep credit may be applicable.

**Section 211**: Violations cited. Failure to pay the premium regular rate for overtime hours worked. (See Section 207). The employer does not retain address and social security information for all employees where there is an employment relationship.

**Section 212**: No violation cited.

Total back wages are $34,958.62 between 18 individuals. All violations are on the face of the weekly payroll record. Six of 6 interviews support at least one of the violations.

## DISPOSITION

On 9/25/2023, the WHI and attorney Ms. Clayton held an interim final conference via Microsoft Teams. Ahead of the conference, the WHI sent an agenda for the meeting via email: an overview of the FLSA, an overview of the employer's status of compliance, and then discussions around ability to pay. The employer was in receipt via email of a tolling agreement since 7/31/2023, preliminary computations with most back wages computed since 7/31/2023, a copy of final computations since 8/22/2023; and the WH-56, LDLL agreement, and instructions for proof of payment since 9/14/2023. The documents assume an ability to pay agreement by 10/28/2023. The conference was held with the employer already putting in writing a tentative refusal to pay.

The WHI reviewed the major sections of the FLSA: the federal minimum wage, overtime, child labor, and recordkeeping. The WHI also clarified individual coverage for the domestic service workers. The counsel had no general questions or comments. Then, the WHI reviewed the employer's status of compliance. The WHI explained that violations are cited specific to overtime. The WHI stated that more

than half of the requested are because of the invalid alternative to overtime pay for nonexempt employees. The employer provided no new information regarding the reason for the violation. The counsel confirmed that her client ended the alternative to overtime pay, instead capping workers to 40 hours. The counsel stated that some overtime has been paid back to certain employees and that the firm can provide documents. The WHI welcomed the documents to be sent via email. The WHI clarified that, to credit the employer, the WHD needs evidence that such payments were intended to be retroactive Time and a half for overtime, and a cancelled check or other confirmation would be needed to show that the checks were not just issued but cashed. The counsel asked how the firm could handle an old payment where the employee may have chosen or forgot to cash the check. The WHI emphasized the evidence needed to properly credit the employer toward the back wages requested.

The WHI then stated the 2nd most significant violation was also due to straight time pay for overtime, but the affected workers were misclassified as independent contractors when they have the same employment relationship as W-2 employees. The WHI explained the core factors vs. other factors of economic reality. The counsel brought up employee [(b)(6), (b)(7)(C)] as someone who is employed as a [(b)(6), (b)(7)(C)] and immediate household acting moreso as a fiscal fiduciary to the client, with a full-time job in a career titled as [(b)(6), (b)(7)(C)] The WHI explained that under FLSA the decision to hire the family or household member does not turn all care provided into employment, and that the employment relationship is commonly determined by the plan of care or other written agreement. The WHI stated that he will follow up on any changes to the computations or what the WHD may need to substantiate any payment for hours worked being paid for additional time inherent to a familial relationship outside the plan of care. The WHI also walked through the concept of being employed to wait vs. waiting to be employed.

Then, the WHI explained the violation related to uncombined hours in the same week for the purpose of overtime hours. The counsel had no additional questions or comments.

Then, the WHI moved to a discussion on ability to pay the back wages and liquidated damages. The WHI explained the concept of liquidated damages. The counsel stated that it would still be difficult for the firm to not see the damages as a penalty amount, anyway, but that the counsel herself understood the concept. The WHI stated that the case has already been deemed appropriate for litigation and the agency is requesting payment within 30 days of 9/28/2023 as outlined in the payment instructions. In this event, the WH-56 and LDLL agreement need be signed by 9/28/2023. The WHI stated that any requests beyond 30 days, or additional time beyond 9/28/2023 for the employer to review the computations, will require a tolling agreement by 9/28/2023 to lock in the violation period while giving the employer additional time. The WHI also explained that an inability to pay within 30 days means an installment plan where interest does accrue, and that any inability to pay will need to be substantiated with additional financial disclosure. Outside of the tolling agreement, The WHI walked through the personal and business financial disclosure needed for any installment plan beyond 30 days:

- Three years of Personal Tax Returns
- Twelve months of bank statements for ALL personal accounts
- Signed Financial Disclosure Form
- Three years of Business Tax Returns
- Three years of Audited Annual Financial Statements (Balance Sheet and Income Statement)
- Year to Date Financial statements (Balance Sheet and Income Statement)

- Twelve months of bank statements for ALL business accounts

The counsel asked what could happen if the employer pays all back wages within 30 days but chooses to pay the liquidated damages later. The WHI stated that would likely be in violation of any written agreement in place by then and that back wages and liquidated damages are paid to the individual employee at the same time, where the back wages are subjected to payroll taxes and the damages are not. The WHI did not offer further guidance into the technical question regarding incomplete future payments. The counsel stated the hypothetical was primarily to answer questions that the employer will ultimately have. The counsel stated that the firm will send additional documents of overtime already paid to certain employees, and the firm will reach a decision by 9/28/2023 on intentions to at least sign a tolling agreement, if no pertinent facts change. The WHI stated that he would follow up on the question of James Watson.

By the end of day, the counsel provided 3 statements signed in September 2023 about employee (b)(6); (b)(7)(C) (b)(6): ]s alleged history of falsifying time records, even though the employer still tracked her hours and paid her. The council also shared earning statements and weekly payroll, for two employees, that the employer claims are promised payments, already anticipated by employees, that were intended to cover at least in part the halftime still due.

On 9/26/2023, the WHI sent a follow-up email to the employer with requests for additional information, after consulting with ADD Diaz. On 9/28/2023, the tolling agreement had not been signed.

On 10/11/2023, the final conference was held between the WHI and counsel, over the phone, to discuss final abilities to pay beyond 30 days. The agenda of the meeting was the signing of the tolling agreement. The counsel stated that the 3(d) employer was unconvinced of the benefits of signing the agreement. The WHI stated that ultimately the agreement should be signed by 10/16/2023 or the review would conclude as a refusal to pay. The WHI advised that, in such an event, that the 3(d) employer and counsel should await further correspondence from the Wage & Hour Division.

On 10/16/2023, the tolling agreement was still not signed and returned to the WHI. The WHI considered this a refusal to further comply or pay. The employer did provide alleged proof of retroactive overtime already paid via additional payroll and time records, and a written statement via counsel on the employment of [ (b)(6); (b)(7)(C) ]

[(b)(6); (b)(7)(C)] was ultimately removed due to a lack of clarity on his economic dependence on the employer, and a refusal to cooperate in response to phone and mail outreach. Back wages and liquidated damages for all other employees remained unchanged on the WH-56. An analysis of the amount of overtime claimed by both [ (b)(6); (b)(7)(C) ] in the same week for the same client, as well interview statements, did not support the substantial time fraud allegations, where the owner claimed none of the payroll and time information in response to the appointment letter was reliable for [ (b)(6); (b)(7)(C) ] and [(b)(6); (b)(7)(C)] were among those employees due the most in back wages. The employer did not clarify a better business record for specific workweeks of fraud.

By 12/20/2023, the employer was issued an updated WH-56, summary of the impact of retroactive payments on the total due, and proof of payment instructions. A new deadline was set to return the WH-56 by 12/27/2023. The employer did not return any forms to her counsel by the deadline. The WHI on 12/28/2023 and made a final request in email for both the WH-56 and new LDLL agreement to be signed in event the firm decides to comply. The 3(d) employer returned a signed WH-56 on 1/18/2024.

All back wages and liquidated damages were on the signed WH-56. A request was still made for a signed LDLL agreement, via email.

Publications: The following publications were provided to the employer:

- Via email:
    - o FLSA Handy Reference Guide
    - o Fact Sheet #13 (Employment Relationship)
    - o Fact Sheet #21 (Recordkeeping)
    - o Fact Sheet #17N (541 Nurses and Learned Professionals)
    - o Fact Sheet #44 (Visits to Employers)
    - o Fact Sheet #77A (Prohibiting Retaliation under the Fair Labor Standards Act).
    - o Fact Sheet #79F (Paid Family or Household Members)

Recommendations:

(b)(5); (b)(7)(E)

Further correspondence should be sent to:

Meagan Clayton, attorney
Rhoades McKee
55 Campau Avenue NW Ste 300
Grand Rapids, MI, 49503
Office: 616-235-3500
Direct: 616-233-5136
Fax: 616-233-5269
Email: mclayton@rhoadesmckee.com


Kristopher Johnson, Wage-Hour Investigator
Grand Rapids District Office
1/19/2024

**McKay, Heather**

| Check Date | WW Ending | HW | OT HW | Straight Time Gross | | Regular Rate of Pay | Halftime Rate | | HT Still Due |
|---|---|---|---|---|---|---|---|---|---|
| 12/09/2022 | 12/04/2022 | 45.00 | 5.00 | $652.50 | $ | 14.50 | $ 7.25 | $ | 36.25 |
| 11/10/2022 | 11/05/2022 | 83.50 | 43.50 | $1,210.75 | $ | 14.50 | $ 7.25 | $ | 315.38 |
| 11/04/2022 | 10/30/2022 | 78.50 | 38.50 | $1,138.25 | $ | 14.50 | $ 7.25 | $ | 279.13 |
| 10/28/2022 | 10/23/2022 | 66.50 | 26.50 | $964.25 | $ | 14.50 | $ 7.25 | $ | 192.13 |
| 10/21/2022 | 10/16/2022 | 63.50 | 23.50 | $920.75 | $ | 14.50 | $ 7.25 | $ | 170.38 |
| 10/14/2022 | 10/09/2022 | 84.50 | 44.50 | $1,225.25 | $ | 14.50 | $ 7.25 | $ | 322.63 |
| 09/30/2022 | 09/25/2022 | 63.50 | 23.50 | $920.75 | $ | 14.50 | $ 7.25 | $ | 170.38 |
| 09/23/2022 | 09/18/2022 | 66.50 | 26.50 | $964.25 | $ | 14.50 | $ 7.25 | $ | 192.13 |
| 09/16/2022 | 09/11/2022 | 62.00 | 22.00 | $899.00 | $ | 14.50 | $ 7.25 | $ | 159.50 |
| 09/09/2022 | 09/04/2022 | 52.00 | 12.00 | $754.00 | $ | 14.50 | $ 7.25 | $ | 87.00 |
| 09/02/2022 | 08/28/2022 | 60.00 | 20.00 | $870.00 | $ | 14.50 | $ 7.25 | $ | 145.00 |
| 08/26/2022 | 08/21/2022 | 61.50 | 21.50 | $891.75 | $ | 14.50 | $ 7.25 | $ | 155.88 |
| 08/19/2022 | 08/14/2022 | 56.50 | 16.50 | $819.25 | $ | 14.50 | $ 7.25 | $ | 119.63 |
| 08/12/2022 | 08/07/2022 | 75.00 | 35.00 | $1,087.50 | $ | 14.50 | $ 7.25 | $ | 253.75 |
| 08/05/2022 | 07/31/2022 | 86.00 | 46.00 | $1,247.00 | $ | 14.50 | $ 7.25 | $ | 333.50 |
| 07/29/2022 | 07/24/2022 | 55.00 | 15.00 | $797.50 | $ | 14.50 | $ 7.25 | $ | 108.75 |
| 07/22/2022 | 07/17/2022 | 55.00 | 15.00 | $797.50 | $ | 14.50 | $ 7.25 | $ | 108.75 |
| 07/15/2022 | 07/10/2022 | 86.00 | 46.00 | $1,247.00 | $ | 14.50 | $ 7.25 | $ | 333.50 |
| 07/08/2022 | 07/03/2022 | 75.00 | 35.00 | $1,087.50 | $ | 14.50 | $ 7.25 | $ | 253.75 |
| 07/01/2022 | 06/26/2022 | 50.00 | 10.00 | $675.00 | $ | 13.50 | $ 6.75 | $ | 67.50 |
| 06/17/2022 | 06/12/2022 | 51.00 | 11.00 | $688.50 | $ | 13.50 | $ 6.75 | $ | 74.25 |
| 06/10/2022 | 06/05/2022 | 52.00 | 12.00 | $702.00 | $ | 13.50 | $ 6.75 | $ | 81.00 |
| 06/03/2022 | 05/29/2022 | 66.00 | 26.00 | $891.00 | $ | 13.50 | $ 6.75 | $ | 175.50 |
| 05/27/2022 | 05/22/2022 | 58.00 | 18.00 | $783.00 | $ | 13.50 | $ 6.75 | $ | 121.50 |
| 05/20/2022 | 05/15/2022 | 56.00 | 16.00 | $756.00 | $ | 13.50 | $ 6.75 | $ | 108.00 |
| 05/13/2022 | 05/08/2022 | 62.00 | 22.00 | $837.00 | $ | 13.50 | $ 6.75 | $ | 148.50 |
| 05/06/2022 | 05/01/2022 | 64.00 | 24.00 | $864.00 | $ | 13.50 | $ 6.75 | $ | 162.00 |
| 04/29/2022 | 04/24/2022 | 64.50 | 24.50 | $870.75 | $ | 13.50 | $ 6.75 | $ | 165.38 |
| 04/22/2022 | 04/17/2022 | 58.50 | 18.50 | $789.75 | $ | 13.50 | $ 6.75 | $ | 124.88 |
| 04/15/2022 | 04/10/2022 | 74.00 | 34.00 | $999.00 | $ | 13.50 | $ 6.75 | $ | 229.50 |
| 04/08/2022 | 04/03/2022 | 66.50 | 26.50 | $897.75 | $ | 13.50 | $ 6.75 | $ | 178.88 |
| 04/01/2022 | 03/27/2022 | 73.50 | 33.50 | $992.25 | $ | 13.50 | $ 6.75 | $ | 226.13 |
| 03/25/2022 | 03/20/2022 | 73.50 | 33.50 | $992.25 | $ | 13.50 | $ 6.75 | $ | 226.13 |
| 03/04/2022 | 02/27/2022 | 42.50 | 2.50 | $573.75 | $ | 13.50 | $ 6.75 | $ | 16.88 |
| 02/25/2022 | 02/20/2022 | 63.00 | 23.00 | $850.50 | $ | 13.50 | $ 6.75 | $ | 155.25 |
| 02/18/2022 | 02/13/2022 | 59.00 | 19.00 | $796.50 | $ | 13.50 | $ 6.75 | $ | 128.25 |
| 02/11/2022 | 02/06/2022 | 50.00 | 10.00 | $675.00 | $ | 13.50 | $ 6.75 | $ | 67.50 |
| 02/04/2022 | 01/30/2022 | 52.00 | 12.00 | $702.00 | $ | 13.50 | $ 6.75 | $ | 81.00 |
| 01/28/2022 | 01/23/2022 | 87.00 | 47.00 | $1,174.50 | $ | 13.50 | $ 6.75 | $ | 317.25 |
| 01/21/2022 | 01/16/2022 | 55.00 | 15.00 | $742.50 | $ | 13.50 | $ 6.75 | $ | 101.25 |
| 01/14/2022 | 01/09/2022 | 68.50 | 28.50 | $924.75 | $ | 13.50 | $ 6.75 | $ | 192.38 |
| 01/07/2022 | 01/02/2022 | 66.00 | 26.00 | $891.00 | $ | 13.50 | $ 6.75 | $ | 175.50 |
| 12/24/2021 | 12/19/2021 | 75.00 | 35.00 | $1,012.50 | $ | 13.50 | $ 6.75 | $ | 236.25 |
| 12/03/2021 | 11/28/2021 | 63.50 | 23.50 | $857.25 | $ | 13.50 | $ 6.75 | $ | 158.63 |
| 11/26/2021 | 11/21/2021 | 48.50 | 8.50 | $693.25 | $ | 14.29 | $ 7.15 | $ | 60.75 |
| 11/19/2021 | 11/14/2021 | 47.50 | 7.50 | $700.75 | $ | 14.75 | $ 7.38 | $ | 55.32 |
| 10/01/2021 | 09/26/2021 | 60.50 | 20.50 | $816.75 | $ | 13.50 | $ 6.75 | $ | 138.38 |
| 09/24/2021 | 09/19/2021 | 71.50 | 31.50 | $965.25 | $ | 13.50 | $ 6.75 | $ | 212.63 |
| 09/17/2021 | 09/12/2021 | 53.00 | 13.00 | $715.50 | $ | 13.50 | $ 6.75 | $ | 87.75 |
| 09/10/2021 | 09/05/2021 | 63.00 | 23.00 | $850.50 | $ | 13.50 | $ 6.75 | $ | 155.25 |
| 09/03/2021 | 08/29/2021 | 86.00 | 46.00 | $1,161.00 | $ | 13.50 | $ 6.75 | $ | 310.50 |
| 08/27/2021 | 08/22/2021 | 61.00 | 21.00 | $823.50 | $ | 13.50 | $ 6.75 | $ | 141.75 |
| 08/20/2021 | 08/15/2021 | 70.00 | 30.00 | $945.00 | $ | 13.50 | $ 6.75 | $ | 202.50 |
| 08/13/2021 | 08/08/2021 | 80.00 | 40.00 | $1,080.00 | $ | 13.50 | $ 6.75 | $ | 270.00 |
| 07/30/2021 | 07/25/2021 | 43.00 | 3.00 | $580.50 | $ | 13.50 | $ 6.75 | $ | 20.25 |

Grand Total    $ 9,111.70

(b)(4); (b)(6); (b)(7)(C)

**STATE OF MICHIGAN**
**IN THE 56ᵀᴴ JUDICIAL DISTRICT COURT FOR THE COUNTY OF EATON**

HEATHER MCKAY,
    Plaintiff,

**CASE NO. 24-**        **-CZ**

    V

**HON.**

VICTORIA WENDORF; an individual; BLUE
HEART HOME HEALTHCARE LLC, a
Michigan Limited Liability Company; NEXT
STEP HOME HEALTHCARE LLC, a Michigan
Limited Liability Company; and, NEXT STEP
CASE MANAGEMENT, LLC, a Michigan
Limited      Liability      Company,
    Defendants,
    Jointly and severally.

**JURY DEMAND**

INA R. O'BRIANT (P60968)
LAW OFFICES OF INA R. O'BRIANT, PLLC
Attorney for Plaintiff
P.O. Box 197
Mason, MI 48854
(517) 204-9195
iobriantlaw@yahoo.com

---

**JURY DEMAND**

Plaintiff demands a jury trial on all issues triable to a jury.

Respectfully submitted by:

Dated: November 21, 2024

/s/ Ina R. O'Briant (signed electronically)
INA R. O'BRIANT (P60968)
LAW OFFICES OF INA R. O'BRIANT, PLLC
Attorney for Plaintiff
P.O. Box 197
Mason, MI 48854
(517) 204-9195
iobriantlaw@yahoo.com

## STATE OF MICHIGAN

## IN THE 56A JUDICIAL DISTRICT COURT FOR THE COUNTY OF EATON

_____

HEATHER MCKAY,

     Plaintiff,

v

VICTORIA WENDORF, an individual;
BLUE HEART HOME HEALTHCARE
LLC, a Michigan Limited Liability
Company; NEXT STEP HOME
HEALTHCARE LLC, a Michigan
Limited Liability Company; and
NEXT STEP CASE MANAGEMENT,
LLC, a Michigan Limited Liability
Company,

     Defendants.

Case No.: 24-4059-CZ

Hon. Adrianne Van Langevelde (P72488)

**DEFENDANTS' ANSWER AND
AFFIRMATIVE DEFENSES**

| | |
|---|---|
| Ina R. O'Briant (P60968)<br>LAW OFFICES OF INA R. O'BRIANT, PLLC<br>Attorneys for Plaintiff<br>P.O. Box 197<br>Mason, MI 48854<br>(517) 204-9195<br>iobriantlaw@yahoo.com | E. Meaghan Clayton (P85409)<br>Peter T. McAndrews (P88076)<br>RHOADES McKEE PC<br>Attorneys for Defendants<br>55 Campau Avenue, N.W., Suite 300<br>Grand Rapids, MI 49503<br>(616) 235-3500<br>mclayton@rhoadesmckee.com |

     Defendants, Victoria Wendorf, Blue Heart Home Healthcare LLC, Next Step Home

Healthcare LLC and Next Step Case Management, LLC (hereinafter collectively "Defendants"),

by and though their undersigned counsel, state for their answer to Plaintiff's Verified Complaint

as follows:

### Jurisdiction and Parties

1.     Plaintiff is an Individual residing in Ingham County, MI.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 and therefore deny the allegations.**

2.       Defendant, VICTORIA WENDORF, is an individual who is a resident of Eaton County, Michigan who also regularly conducts business in Eaton County, MI.

**ANSWER:    The allegations contained in paragraph 2 are admitted.**

3.       Defendant, BLUE HEART HOME HEALTHCARE LLC, a Michigan Limited Liability Company that regularly conducts business in Eaton County, MI;

**ANSWER:    The allegations contained in paragraph 3 are admitted.**

4.       Defendant, NEXT STEP HOME HEALTHCARE LLC, a Michigan Limited Liability Company that regularly conducts business in Eaton County, MI;

**ANSWER:    The allegations contained in paragraph 4 are admitted.**

5.       Defendant, NEXT STEP CASE MANAGEMENT, LLC, a Michigan Limited Liability Company that regularly conducts business in Eaton County, MI;

**ANSWER:    The allegations contained in paragraph 5 are admitted.**

6.       That Defendant, Victoria Wendorf is the sole owner/manager of BLUE HEART HOME HEALTHCARE LLC, a Michigan Limited Liability Company; NEXT STEP HOME HEALTHCARE LLC, a Michigan Limited Liability Company; and, NEXT STEP CASE MANAGEMENT, LLC.

**ANSWER:    The allegations contained in paragraph 6 are admitted.**

7.       Some of the Acts, occurrences, and omissions that gave rise to this cause of action occurred in Eaton County, Michigan.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 and therefore deny the allegations.**

2

5281351.3

8.    The amount in controversy, exclusive of costs, interest, or attorney fees, does not exceed $25,000.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 and therefore deny the allegations.**

### Factual Background

9.    Plaintiff incorporates by reference paragraphs 1 through 8, as if fully restated herein.

**ANSWER:    Defendants incorporate all the foregoing paragraphs as if restated fully here.**

10.    Defendant(s) entered into a contractual relationship with Plaintiff pursuant to which, Plaintiff provided Home Health Care services on behalf of Defendant(s), at Defendant(s) request.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore deny the allegations.**

11.    Between April 20, 2021-April 19, 2023, Plaintiff provided home health care services, on behalf of Defendant(s), at Defendant(s) request.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore deny the allegations.**

12.    That Plaintiff repeatedly requested funds that were due and payable to Plaintiff, by Defendant(s), including but not limited to: overtime wages and/or COVID-19 Pandemic pay.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 and therefore deny the allegations.**

5281351.3

13.     That as a result of Defendant(s) failure/refusal to pay Plaintiff the funds she was due and owed by Defendant(s), Plaintiff filed a Complaint against Defendant(s) with the U.S. Department of Labor.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 and therefore deny the allegations.**

14.     That an Investigation ensued and it was ultimately decided by the US Department of Labor and agreed upon by Defendant(s), that Defendant(s) owed Plaintiff the amount of $18,223.40.

**ANSWER:     The allegations in paragraph 14 are denied.**

15.     On or about January 18, 2024, Defendant provided the US Department of Labor with a fully executed WH-56 Form acknowledging and confirming that they owed Plaintiff the amount of $18,223.40. Defendant(s) is/are in possession of this document.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and therefore deny the allegations.**

16.     That to date, Defendants have still failed to pay the money that is due and payable to Plaintiff.

**ANSWER:     Denied.**

### Count I: Account Stated

17.     Plaintiff incorporates by reference paragraphs 1 through 16, as if fully restated herein.

**ANSWER:     Defendants incorporate all the foregoing paragraphs as if restated fully here.**

18.     At Defendant's request, Plaintiff provided Defendant certain services on open account and on Defendants' promise(s) to pay for them.

5281351.3

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 and therefore deny the allegations.**

19.     The account has become stated between the parties because on January 18, 2024, the parties agreed that there was a balance due to Plaintiff of $18,223.40.  Defendant has not paid the balance owing on the account, despite Plaintiff's demands for payment as well as the US Department of Labor's request(s) for payments.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 and therefore deny the allegations.**

20.     Defendant is now justly indebted to Plaintiff in the amount of $18,223.40.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 and therefore deny the allegations.**

21.     An affidavit verifying the balance due on the account is attached as Exhibit 1, and a copy of the document verifying the Account is attached hereto as Exhibit 2.

**ANSWER:** **Denied.**

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiff's Verified Complaint with prejudice and award them their costs and attorney fees incurred in the defense of this action.

## **Count II: Breach of Contract**

22.     Plaintiff incorporates by reference paragraphs 1 through 21, as if fully restated herein.

**ANSWER:** **Defendants incorporate all the foregoing paragraphs as if restated fully here.**

5281351.3

23.    Defendant entered into a contract with Plaintiff pursuant to which, Plaintiff provided services on behalf of Defendant(s), at Defendant(s) request. The Defendants are in possession of a copy of the above referenced contract.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 and therefore deny the allegations.**

24.    Pursuant to said Contract, Plaintiff proceeded to provide home health care services on behalf of Defendant(s), at Defendant(s) request including but not limited to the time period of: April 20, 2021-April 19, 2023.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 and therefore deny the allegations.**

25.    That Plaintiff repeatedly requested funds that were due and payable to Plaintiff, by Defendant(s).

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 and therefore deny the allegations.**

26.    That Defendants have refused/failed to pay the amount due.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 and therefore deny the allegations.**

27.    That Plaintiff filed a complaint against Defendants, with the US Department of Labor.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 and therefore deny the allegations.**

28.    That the US Department of Labor conducted an investigation into this complaint.

5281351.3

**ANSWER:**    **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 and therefore deny the allegations.**

29.    That the US Department of labor determined that Defendants owed Plaintiff the amount of $18,223.40.

**ANSWER:**    **The allegations in paragraph 29 are denied.**

30.    Defendant's conduct as described in this complaint constituted a breach of the contract between the parties.

**ANSWER:**    **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 and therefore deny the allegations.**

31.    Plaintiff has been damaged by Defendant's breach in the amount of $18,223.40, the outstanding balance due to Plaintiff, by Defendants. (See *Exhibit 2*)

**ANSWER:**    **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 and therefore deny the allegations.**

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiff's Verified Complaint with prejudice and award them their costs and attorney fees incurred in the defense of this action.

## Count III: Quantum Meruit/Unjust Enrichment/Restitution

32.    Plaintiff incorporates by reference paragraphs 1 through 31.

**ANSWER:**    **Defendants incorporate all the foregoing paragraphs as if restated fully here.**

33.    In the alternative, in the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, the doctrine(s) of Quantum Meruit/Unjust Enrichment/Restitution would also apply.

**ANSWER:**    **The allegations in paragraph 33 are denied.**

5281351.3

34.    In the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, that Plaintiff pleads in the alternative that Plaintiff and Defendants engaged in a course of conduct wherein Defendants requested that Plaintiff perform Home Health Care and/or related services, for the benefit of Defendants.

**ANSWER:    The allegations in paragraph 34 are denied.**

35.    In the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, that Plaintiff pleads in the alternative that the course of dealing in which Plaintiff and Defendants engaged in did not constitute or result in a contractual agreement.

**ANSWER:    The allegations in paragraph 35 are denied.**

36.    In the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, that Plaintiff nonetheless conferred a benefit of Home Health Care and/or other related services upon Defendants without receiving adequate benefit in return.

**ANSWER:    The allegations in paragraph 36 are denied.**

37.    In the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, that the benefit that Plaintiff conferred on Defendants has unjustly enriched Defendants without conferring any benefit on Plaintiff, such that Defendants act wrongfully in retaining that benefit.

**ANSWER:    The allegations in paragraph 37 are denied.**

38.    In the event Defendants claim there was no contract or the Contract is deemed to be invalid for any reason, that Plaintiff did not intend that Defendants retain that benefit without just compensation, and Plaintiff has otherwise acted equitably in this matter, such that Defendants must disgorge that benefit to Plaintiff.

**ANSWER:    The allegations in paragraph 38 are denied.**

5281351.3

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiff's Verified Complaint with prejudice and award them their costs and attorney fees incurred in the defense of this action.

Dated: December 20, 2024

RHOADES McKEE PC
Attorneys for Defendants

By: _____
    E. Meaghan Clayton (P85499)
    Business Address:
    55 Campau Avenue, N.W., Suite 300
    Grand Rapids, MI 49503
    Telephone:  (616) 235-3500

## AFFIRMATIVE DEFENSES

Defendants, by and through their undersigned counsel, state as their affirmative defenses as follows:

1.    Plaintiff has failed to state a claim against Defendants on which relief may be granted.

2.    Plaintiff's claims, in whole or in part, may be barred by lack of damages.

3.    Plaintiff's claims, in whole or in part, may be barred by Plaintiff's failure to mitigate damages.

4.    Plaintiff's claims, in whole or in part, may be barred by unclean hands.

5.    Plaintiff's claims, in whole or in part, may be barred because Defendants acted in good faith.

6.    Plaintiff's claims, in whole or in part, may be barred by the statute of limitations.

7.    Defendants reserve the right to amend these affirmative defenses throughout the course of this action.

5281351.3

Dated: December 20, 2024

RHOADES McKEE PC
Attorneys for Defendants

By: _____
    E. Meaghan Clayton (P85409)
    Business Address:
    55 Campau Avenue, N.W., Suite 300
    Grand Rapids, MI 49503
    Telephone:  (616) 235-3500

5281351.3

**STATE OF MICHIGAN**

**IN THE 56A JUDICIAL DISTRICT COURT FOR THE COUNTY OF EATON**

HEATHER MCKAY,

      Plaintiff,

v

VICTORIA WENDORF, an individual;
BLUE HEART HOME HEALTHCARE
LLC, a Michigan Limited Liability
Company; NEXT STEP HOME
HEALTHCARE LLC, a Michigan
Limited Liability Company; and
NEXT STEP CASE MANAGEMENT,
LLC, a Michigan Limited Liability
Company,

      Defendants.

Case No.: 24-4059-CZ

Hon. Adrianne Van Langevelde (P72488)

**<u>DEFENDANTS' RELIANCE ON
JURY DEMAND</u>**

---

Ina R. O'Briant (P60968)
LAW OFFICES OF INA R. O'BRIANT, PLLC
Attorneys for Plaintiff
P.O. Box 197
Mason, MI  48854
(517) 204-9195
iobriantlaw@yahoo.com

E. Meaghan Clayton (P85409)
RHOADES McKEE PC
Attorneys for Defendants
55 Campau Avenue, N.W., Suite 300
Grand Rapids, MI  49503
(616) 235-3500
mclayton@rhoadesmckee.com

---

Defendants rely on the Jury Demand filed by Plaintiff as to all issues triable by a jury.

Dated: December 20, 2024

RHOADES McKEE PC
Attorneys for Defendants


By:_____
    E. Meaghan Clayton (P85409)
    Business Address:
    55 Campau Avenue, N.W., Suite 300
    Grand Rapids, MI 49503
    Telephone:  (616) 235-3500

5281604.1

# STATE OF MICHIGAN

## IN THE 56A JUDICIAL DISTRICT COURT FOR THE COUNTY OF EATON

HEATHER MCKAY,

     Plaintiff,

v

VICTORIA WENDORF, an individual;
BLUE HEART HOME HEALTHCARE
LLC, a Michigan Limited Liability
Company; NEXT STEP HOME
HEALTHCARE LLC, a Michigan
Limited Liability Company; and
NEXT STEP CASE MANAGEMENT,
LLC, a Michigan Limited Liability
Company,

     Defendants.

Case No.: 24-4059-CZ

Hon. Adrianne Van Langevelde (P72488)

**PROOF OF SERVICE**

| | |
|---|---|
| Ina R. O'Briant (P60968) <br> LAW OFFICES OF INA R. O'BRIANT, PLLC <br> Attorneys for Plaintiff <br> P.O. Box 197 <br> Mason, MI  48854 <br> (517) 204-9195 <br> iobriantlaw@yahoo.com | E. Meaghan Clayton (P85409) <br> RHOADES McKEE PC <br> Attorneys for Defendants <br> 55 Campau Avenue, N.W., Suite 300 <br> Grand Rapids, MI  49503 <br> (616) 235-3500 <br> mclayton@rhoadesmckee.com |

On the date below, I served a copy of *Defendants' Answer and Affirmative Defenses and Reliance on Jury Demand upon Plaintiff* and this *Proof of Service*, by email and first-class mail addressed to the following:

     Ina R. O'Briant
     LAW OFFICES OF INA R. O'BRIANT, PLLC
     P.O. Box 197
     Mason, MI  48854
     iobriantlaw@yahoo.com

I declare that the statements above are true to the best of my information, knowledge and belief.

Dated: December 20, 2024

Robin D. Takens
Legal Assistant/Paralegal
Rhoades McKee, PC

5306846.1

2